UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-22088-CIV-HUCK/O'SULLIVAN

MELVIN E. GAVRON,

    Plaintiff,

vs.

WEATHER SHIELD MFG., INC.,

    Defendant.
_____/

## ORDER DENYING MOTION TO DISMISS

Melvin E. Gavron alleges that Defendant Weather Shield Manufacturing, Inc. made misrepresentations regarding windows and doors that it sold, thereby breaching its express warranty and violating the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Weather Shield filed a Motion to Dismiss Count II of the Fourth Amended Complaint, Gavron's FDUTPA claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Court denies Weather Shield's Motion to Dismiss.

**I.    RELEVANT FACTUAL BACKGROUND**

Weather Shield designs, manufactures, and sells a Legacy Series of windows and doors. Individually and on behalf of a class of similarly-situated individuals, Gavron accuses Weather Shield of designing, manufacturing, marketing, selling, and distributing windows and doors that were materially defective. Specifically, the putative class alleges that Weather Shield breached its express warranty (Count I) and violated FDUTPA (Count II). Gavron defines the putative class as "[a]ll persons and/or entities in Florida who own real property in which Weather Shield Legacy windows and/or doors are installed."

As to his individual claims, Gavron alleges that he, through his contractor, purchased from S&S Craftsmen, Inc. through Architectural Product Sales—a sales agent for S&S Craftsmen—more than $300,000 of Weather Shield LifeGuard Legacy Series products. Those windows and doors were installed by a licensed contractor in a home that Gavron was building. Gavron alleges that, within weeks of installation, some of the doors and windows began to leak when it rained. Gavron's contractor informed him that the pitch of the foundation contributed to the leaking doors, but the leaking continued after that problem was rectified.

Gavron then contacted Weather Shield, which gave him the name of a certified Weather Shield installer—American Advantage Window Replacement—that he hired to address the leakage problem. American Advantage removed and reinstalled the doors, which it said were previously incorrectly installed. American Advantage also caulked the windows with silicone. Despite these corrections, the windows and doors continued to leak. Additionally, the doors began to delaminate, swell, and rot, and the glass of the windows distorted due to excess moisture. When Gavron and his contractor called Weather Shield for assistance, they were informed that Weather Shield believed the problem was faulty installation. When Gavron and his contractor removed one of the leaky doors and deconstructed it, they found that the door had not been manufactured in compliance with testing documentation and product approvals filed with the Miami-Dade Building Code Compliance Office's ("BCCO") Product Control Division. Gavron and his contractor documented this process with photographs.

Gavron's contractor contacted a Weather Shield representative, who agreed that the doors were not manufactured in accordance with the BCCO's notice of acceptance, which included specifications for the Legacy Series doors. Despite this, a Weather Shield representative notified Gavron's contractor that Weather Shield would not honor the warranty on the products. A BCCO representative then visited Gavron's property. On July 8, 2010, after this visit, the BCCO issued a report finding "several non-conformities" in the Weather Shield doors and windows that Gavron purchased, as compared to the specifications that the BCCO approved. Furthermore, in August 2010, after conducting an audit of Weather Shield's manufacturing facilities, the BCCO issued another

report finding that Weather Shield exercised "inadequate Quality Control over miscellaneous aspects of the fabrication process."

Gavron alleges that Weather Shield advertised and represented that the Legacy Series windows and doors were properly sealed and reinforced, such that they would resist air and water infiltration.[1] However, Gavron alleges that the Weather Shield Legacy Series windows and doors are materially defective because they are not properly sealed with structural silicon, are improperly finished, contain defective weather-stripping, and are misaligned.[2] The result of these defects is that

---

[1] Gavron alleges that Weather Shield made the following advertising statements regarding its Legacy Series windows and doors: (a) "Every Legacy Series door handle is designed to open and close fluidly while multi-point locking mechanisms secure them tightly to provide you with around-the-clock protection from the elements"; (b) "Legacy Series doors have a thicker, heavy-duty 1-1/8" frame featuring a structural corner key with injected silicone reinforces the frame for improved durability and resistance to air and water infiltration"; (c) "Legacy Series windows have a thicker, heavy-duty 1-1/8" frame featuring a structural corner key with injected silicone that reinforces the frame for improved durability and resistance to air and water infiltration"; (d) "Their corner key construction adds durability and an indomitable resistance to the elements"; and (e) "Three-point combination weather stripping on LifeGuard IG hinged French doors ensures a leak-resistant seal that meets the water infiltration ratings of coastal building codes."  (4th Am. Compl. ¶¶ 28–30, 63.)

[2] Specifically, Gavron alleges the following defects in the Legacy Series windows and doors:
- The joints between the door jams and the door thresholds are not factory sealed with a structural silicone. This defect permits air and water to enter the structure
- The doors and windows contain a frame with "channels" into which glass slabs are inserted. During the manufacturing process, when glass slabs are inserted into the channels, the channels are not filled with the structural silicone sealant (an appropriate caulking material). The uncaulked empty space between the glass and the channels serve as a path for water to enter into the doors and windows. This causes the doors and windows to develop wood rot and the interior wood surfaces of the doors and windows to delaminate.
- The doors and windows contain either no exterior caulking where glass meets other materials, such as wood or aluminum, or spotty caulking. The uncaulked empty space

3

the windows and doors permit air and water intrusion, causing the windows and doors to rot and delaminate. Gavron alleges that these defects render the windows and doors worthless.

Gavron alleges that Weather Shield knew that these defects would be unknown and not easily discoverable by consumers and, therefore, would defeat the consumers' ordinary, foreseeable, and reasonable expectations concerning the performance of Weather Shield Legacy Series doors and windows. Gavron further alleges that these representations are misleading to consumers in the absence of a disclosure that such defects exist.

---

      between the glass and the other materials causes moisture to build up between the layers of glazed/laminated glass, causing distortion and delamination of the glass, while concomitantly allowing water to pass into the doors and windows and contribute to wood rot.
- The doors and windows are manufactured using rusted finish nails that are not properly spaced, resulting in deficient structural integrity and permitting separation of wood components. This further causes the development of crevices, which enables water to pass into the interior structure of the doors and windows.
- Weather Shield weather-stripping is manufactured with a non-uniform adhesive backing. Therefore, the product does not properly adhere in many locations. This non-adhesive weather-stripping allows air and water intrusion into the Window Products, causing the Window Products to rot and delaminate.
- The windows evidence factory misalignment of male/female dovetails. This misalignment renders the windows virtually useless because they cannot be opened and/or closed properly, which results in air and water intrusion into the structure.
- The rotting and swelling of the doors -- caused by air and water intrusion -- undermines their structural integrity which, in turn, causes the locking mechanism to fail.

(4th Am. Compl. ¶¶ 24, 54.)

## II. PROCEDURAL HISTORY

Weather Shield filed its Motion to Dismiss Count II on January 18, 2011. After Gavron responded, Weather Shield filed its Reply on February 7, 2011. On February 23, 2011, the Court held a hearing on the Motion. At the hearing, the Court decided, and the parties agreed, that the Court should stay the case pending the Eleventh Circuit's decision in *Fitzpatrick v. General Mills, Inc.*, an appeal from this Court's decision to certify a FDUTPA class action, which addressed the issue of whether a plaintiff pleading a FDUTPA claim must plead reliance on alleged misrepresentations by a defendant. The Eleventh Circuit entered its decision in that case on March 25, 2011. *See Fitzpatrick v. General Mills, Inc.* (*Fitzpatrick II*), 635 F.3d 1279 (11th Cir. 2011). In response, the Court requested that the parties submit additional briefs analyzing the implications of the Eleventh Circuit's *Fitzpatrick II* decision for this case. The parties have done so, and the Motion is now ripe for adjudication.

## III. ANALYSIS

A consumer's claim for damages made pursuant to FDUTPA "has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d Dist. Ct. App. 2006). Defendant Weather Shield contends that Plaintiff Gavron has not sufficiently pled causation. Weather Shield also argues that Gavron fails to sufficiently allege that Weather Shield was aware that the Legacy Series doors and windows contained material defects. The Court considers these arguments, in turn, below.

### A. Reliance

In its supplemental briefing to the Court, Weather Shield explains that its causation argument is that Gavron has failed to allege reliance on Weather Shield's alleged misrepresentations.[3] The

---

[3] In its Motion to Dismiss, Weather Shield also argued that Gavron failed to plead causation because Gavron failed to indicate that he was exposed to Weather Shield's alleged misrepresentations. Weather Shield does not assert that this argument survived the Eleventh Circuit's decision in *Fitzpatrick II*.

5

Court finds that Gavron was not required to plead reliance on Weather Shield's alleged misrepresentations in order to state a claim pursuant to FDUTPA.

As both parties are aware, the Court is familiar with the discordant decisions in the Florida appellate courts regarding a plaintiff's obligation pursuant to FDUTPA to plead his reliance on an alleged misrepresentation. *See Fitzpatrick v. General Mills, Inc.* (*Fitzpatrick I*), 263 F.R.D. 687, 694–95 (S.D. Fla. 2010); *In re Court Reporting Firms*, 715 F. Supp. 2d 1265, 1281–82 (S.D. Fla. 2010). In fact, the Court has noted its concern regarding the conflicting decisions in the Florida appellate courts. 263 F.R.D. at 694. While disagreements persist in the Florida appellate courts, the Eleventh Circuit has simplified the issue for this Court. In *Fitzpatrick II*, the Eleventh Circuit affirmed this Court's reasoning in *Fitzpatrick I* that a plaintiff need not allege reliance on an allegedly false statement in order to state a claim pursuant to FDUTPA. *Fitzpatrick II*, 635 F.3d at 1283 ("In its analysis, the district court repeatedly stated that a plaintiff need not prove reliance on the allegedly false statement to recover damages under FDUTPA, but rather a plaintiff must simply prove that an objective reasonable person would have been deceived. And, this is correct.").

In light of the Eleventh Circuit's decision in *Fitzpatrick II*, the Court finds that Gavron need not allege his reliance on Weather Shield's alleged misrepresentations in order to state a FDUTPA claim. Without citing to case law indicating that the Court has discretion to do so, Weather Shield argues strenuously that the Court may disregard the Eleventh Circuit's pronouncements of law regarding whether a plaintiff asserting a FDUTPA cause of action must allege reliance. The Court declines Weather Shield's invitation to "reverse" the Eleventh Circuit on this issue. Gavron alleges facts indicating that Weather Shield made misleading representations that would deceive an objectively reasonable person. Thus, in accordance with the Eleventh Circuit's interpretation of FDUTPA, the Court finds that Gavron adequately has alleged causation.

**B.** **Weather Shield's Knowledge of Alleged Defects**

Weather Shield also argues that Gavron's FDUTPA cause of action fails to state a claim because Gavron does not allege that Weather Shield had knowledge of the defects that Gavron alleges. Weather Shield's argument assumes that a defendant must have knowledge of an alleged

defect in order to state a FDUTPA claim. Weather Shield relies solely on *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and its progeny in arguing that Gavron has not pled knowledge sufficiently, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. In turn, Gavron argues that a plaintiff asserting a FDUTPA claim is not required to plead a defendant's knowledge of an alleged defect. The Court finds that FDUTPA does not require Weather Shield to have subjective knowledge of alleged defects in order for Gavron to state a viable FDUTPA claim.

It is perhaps telling that Weather Shield, in support of its argument, does not cite to any case specifically discussing FDUTPA's requirements. As discussed previously, a consumer's claim for damages made pursuant to FDUTPA "has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d Dist. Ct. App. 2006). FDUTPA proscribes "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Stat. § 501.204(1). The Court's research reveals that the Florida Supreme Court teaches that a deceptive act occurs when "there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003) (citing *Millenium Commc'ns & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So.2d 1256, 1263 (Fla. 3d Dist. Ct. App. 2000)). Thus, the Act focuses on whether an act is deceptive, not whether a defendant knew that the allegedly violative conduct was occurring. *See Orkin Exterminating Co. v. Federal Trade Comm'n*, 849 F.2d 1354, 1368 (11th Cir. 1988) (stating, in the context of a Federal Trade Commission Act violation case, "[g]iven that a practice may be deceptive without a showing of intent to deceive, it is apparent that a practice may be found unfair to consumers without a showing that the offending party intended to cause consumer injury").[4] Weather Shield does not cite any case holding that a

---

[4] FDUTPA provides that "in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act . . . ." Fla. Stat. § 501.204(2). Because FDUTPA is the state counterpart to the Federal Trade Commission Act, a state court "deciding whether an act or practice may be deemed deceptive . . . must give due consideration and great weight to the interpretations made by the Federal Trade Commission and the federal courts." *Millenium Commc'ns & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So.2d

defendant's subjective knowledge of a deceptive practice is relevant to an analysis regarding whether a plaintiff states a claim pursuant to FDUTPA. Weather Shield also does not argue that Gavron has failed to allege that Weather Shield made representations and omissions that were likely to mislead a consumer acting reasonably in the circumstances. Thus, the Court finds that Weather Shield does not succeed in its argument that Gavron's FDUTPA claim fails merely because Gavron does not allege that Weather Shield had knowledge of the alleged defects.

### IV.  CONCLUSION

For the foregoing reasons, the Court finds that Gavron states a FDUTPA claim in Count II of the Fourth Amended Complaint. Therefore, Weather Shield's Motion to Dismiss COUNT II is DENIED.

DONE AND ORDERED in Chambers, Miami, Florida, on May 10, 2011.

/s/ Paul C. Huck
Paul C. Huck
United States District Judge

**Copies furnished to:**
All Counsel of Record

---

1256, 1263 (Fla. 3d Dist. Ct. App. 2000).